IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GARY RAY ORTEGA,<br><br>Plaintiffs,<br><br>v.<br><br>LASIK VISION INSTITUTE and CARE CREDIT/SYNCHRONY BANK,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR ORDER TO AMEND COMPLAINT (ECF NO. 5) AND DENYING MOTION FOR OFFICAL SERVICE OF PROCESS (ECF NO. 4)**<br><br>Case No. 2:18-cv-00982-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Pro se Plaintiff Gary Ray Ortega moved the Court for an Order to Amend Complaint (ECF No. 5) and for Official Service of Process (ECF No. 4). In his Motion for Order to Amend Complaint, Mr. Ortega seeks leave to amend his original Complaint dated December 22, 2018 (ECF No. 3). (ECF No. 5.) That Complaint, which is less than two pages in length, recites certain facts and requests damages but fails to state sufficient basis for the Court's subject matter jurisdiction or assert any causes of action against the Defendants Lasik Vision Institute ("Lasik Vision") and Synchrony Bank/Care Credit. (See ECF No. 3.) Mr. Ortega's Proposed Amended Complaint, however, alleges that this case is "based on Diversity of Citizenship." (Proposed Am. Compl., ¶ 26, ECF No. 5-1.) The Proposed Amended Complaint also asserts causes of action against Lasik Vision for (1) misrepresentation of fact, (2) medical malpractice, (3) battery, (4) negligence per se, and (5) breach of the implied warranty of fitness for a

1

particular purpose, and a claim for breach of contract against Synchrony Bank/Care Credit. (Id., ¶¶ 27–100, ECF No. 5-1.)

For the reasons set forth in detail below, the Court[1] GRANTS IN PART and DENIES IN PART Mr. Ortega's Motion for Order to Amend Complaint.[2] Mr. Ortega's Proposed Amended Complaint (ECF No. 5-1) is deficient because it (1) fails to demonstrate that the Court has subject matter jurisdiction to hear this case, (2) fails to allege that Mr. Ortega complied with the prelitigation procedural requirements of the Utah Health Care Malpractice Act, Utah Code Ann. 78–14–1, et seq., which are prerequisites to bringing claims in this court against Lasik Vision arising out of his December 2016 eye surgery, and (3) fails to allege facts sufficient to state a breach of contract claim against Synchrony Bank/Care Credit.

Given these deficiencies and because Mr. Ortega's Proposed Amended Complaint would be subject to dismissal if filed, the Court finds that Mr. Ortega's proposed amendment is futile. Accordingly, the Court DENIES Mr. Ortega's Motion for Order to Amend Complaint to the extent he seeks to file the Proposed Amended Complaint attached to his Motion as ECF No. 5-1. However, the Court GRANTS Mr. Ortega leave to file an Amended Complaint by May 24, 2019. The Amended Complaint should, to the extent possible, correct the deficiencies outlined below. Further, the Court DENIES without prejudice Mr. Ortega's Motion for Official Service of Process

---

[1] On February 4, 2019, the District Judge referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). (ECF No. 6.)

[2] Pursuant to Rule 7-1(f) of the District of Utah's Local Rules, the undersigned finds oral argument unnecessary and will determine the Motions on the basis of the written memoranda.

because the Court finds service of that facially deficient Complaint (ECF No. 3) unwarranted at this time.

## FACTUAL BACKGROUND

On January 7, 2019, a magistrate judge granted Mr. Ortega's request to proceed in forma pauperis in this matter. (ECF No. 2.) Mr. Ortega's original Complaint, dated December 28, 2018, names Lasik Vision and Synchrony Bank/Care Credit as Defendants. (Compl., ECF No. 3.) Mr. Ortega asserts that on December 31, 2016, Lasik Vision performed Lasik eye surgery on him, causing irreparable damage to his eyes. (Id., ¶¶ 1, 3–4, 7–13.) He also asserts that he became "indebted" to Synchrony Bank/Care Credit prior to the surgery and that he "is now paying 'interest on the interest' which is not part of the credit card agreement" and is "unconscionable." (Id., ¶¶ 2, 5–6.) Mr. Ortega seeks $5,000,000 in damages. (Id. at 2.) The Complaint does not state sufficient factual allegations concerning the Court's subject matter jurisdiction or assert causes of action against any of the Defendants. (See id.) On January 11, 2019, Mr. Ortega moved the Court to serve the summonses and Complaint on Lasik Vision and Synchrony Bank. (Mot. for Official Service of Process, ECF No. 4.)

On January 25, 2019, Mr. Ortega filed a motion seeking leave to amend his Complaint pursuant to Federal Rule of Civil Procedure 15. (Mot. for Order to Am. Compl., ECF No. 5.) Mr. Ortega attaches a Proposed Amended Complaint to his Motion. (Proposed Am. Compl., ECF No. 5-1.) The Proposed Amended Complaint asserts the same basic facts concerning the surgery that Lasik Vision performed on Mr. Ortega and his indebtedness to Synchrony Bank/Care Credit. (Id., ¶¶ 8–21.) In contrast to his original Complaint, Mr. Ortega also alleges that "[t]his case is based on

Diversity of Citizenship," (id., ¶ 26), and asserts causes of action against Lasik Vision for (1) misrepresentation of fact, (2) medical malpractice, (3) battery, (4) negligence per se, and (5) breach of the implied warranty of fitness for a particular purpose, and a claim for breach of contract against Synchrony Bank/Care Credit. (Id., ¶¶ 27–100, ECF No. 5-1.) In the Proposed Amended Complaint, Mr. Ortega continues to seek $5,000,000 in damages. (Id., ¶¶ 101–103.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a)(2) provides that district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court may deny leave to amend only for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). " 'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.' " Lind v. Aetna Health, Inc., 466 F.3d 1195, 1199 (10th Cir. 2006) (quoting Bradley v. J.E. Val–Mejias, 379 F.3d 892, 901 (10th Cir. 2004)); see also Watson ex rel. Watson v. Beckel, 242 F.3d 1237, 1239–40 (10th Cir. 2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . .").

While a court construes the filings of a pro se plaintiff liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers," Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), a pro se plaintiff must " 'follow the same rules of

4

procedure that govern other litigants.' " Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)). Thus, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.' " Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting Hall, 935 F.2d at 1110). While a court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]" Hall, 935 F.2d at 1110, the court cannot act as the litigant's advocate, supply additional factual allegations, or develop a legal theory for her. See, e.g., Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009).

## DISCUSSION

### A. The Proposed Amended Complaint Does Not Establish Subject Matter Jurisdiction

Mr. Ortega's Proposed Amended Complaint asserts that this case is "based on Diversity of Citizenship." (Proposed Am. Compl., ¶ 26, ECF No. 5-1.) While Mr. Ortega does not state sufficient facts to support his assertion that diversity jurisdiction exists, as to venue he states that

> [p]ursuant to FRCP Rule 1391 subsection (a), (b), and (c), this court has jurisdiction because (i) the Corporate Offices of LVI are out of the state of Utah in Palm Beach Florida and (ii) the Corporate Offices of SB/CC are in Orlando Florida with accounting offices in Draper, Utah.

(Id., ¶ 23.) Further, Mr. Ortega alleges that he is a "lifetime resident of Utah," (id., ¶ 25), and seeks a total of $5,000,000 in damages. (Id., ¶¶ 101–03.)

"District [] courts have limited subject matter jurisdiction and may only hear cases 'when empowered to do so by the Constitution and by act of Congress.' " Radil v.

5

Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004) (quoting 16 James Wm. Moore, Moore's Federal Practice § 108.04(2) (3d ed. 2003)).  Subject matter jurisdiction arises through one of two ways.  First, Congress provides federal district courts with federal question jurisdiction "over 'civil actions arising under the Constitution, laws, or treaties of the United States.' " Firstenberg v. City of Santa Fe, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting 28 U.S.C. § 1331).  Second, Congress grants federal district courts diversity jurisdiction "over 'all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States.' " Grynberg v. Kinder Morgan Energy Partners, L.P., 805 F.3d 901, 905 (10th Cir. 2015) (quoting 28 U.S.C. § 1332) (alterations in original).  To invoke diversity jurisdiction, "the citizenship of all defendants must be different from the citizenship of all plaintiffs." McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008).

"The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.' " Penteco Corp. Ltd. P'ship--1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  "When suing multiple defendants in a diversity action, the plaintiff bears the burden of proving that diversity jurisdiction exists for each defendant." McBride v. Doe, 71 F. App'x 788, 789–90 (10th Cir. 2003) (unpublished) (citing United States ex. rel. General Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)).  Further, a plaintiff must establish that subject matter jurisdiction exists even if he proceeds pro se.  See id. at 790 (finding "Plaintiff's filings lack even the most minimal assertions required to establish jurisdiction in federal court[,]" and "dismissal is warranted despite Plaintiff's pro se status").

6

Mr. Ortega's Proposed Amended Complaint does not allege facts sufficient to show that this Court has subject matter jurisdiction over this case. Mr. Ortega does not allege federal question jurisdiction, and indeed, the Proposed Amended Complaint does not contain any causes of action alleging violation of a federal law. Instead, Mr. Ortega asserts states law claims, such as medical malpractice, negligence, and breach of contract against the Defendants. Further, while Mr. Ortega alleges that diversity of citizenship between the parties exists, he does not plead facts sufficient to show the existence of diversity jurisdiction. Mr. Ortega sufficiently alleges that the amount in controversy exceeds $75,000, (Proposed Amended Compl., ¶¶ 101-102, ECF No. 5-1), but he does not adequately allege diversity of citizenship between the parties. The Court outlines the deficiencies in Mr. Ortega's allegations below.

1. Mr. Ortega alleges that he is a "lifetime resident of Utah," (Proposed Am. Compl., ¶ 25, ECF No. 5-1), but does not allege his citizenship or domicile. "An individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship." Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1238 (10th Cir. 2015) (citing Whitelock v. Leatherman, 460 F.2d 507, 514 n. 14 (10th Cir. 1972)). Indeed, " 'an allegation that a party [] is a resident of a state is not equivalent to an allegation of "citizenship" ' and is 'insufficient to confer jurisdiction upon the District Court' . . . ." Whitelock, 460 F.2d at 514 n. 14 (quoting Kelleam v. Maryland Casualty Co., 112 F.2d 940 (10th Cir. 1940)). Thus to allege subject matter jurisdiction properly, Mr. Ortega must allege his citizenship or domicile.

2. While Mr. Ortega refers to Lasik Vision's "Corporate Offices," (Proposed Am. Compl., ¶ 23, ECF No. 5-1), he does not specifically allege that Lasik Vision is a

7

corporation, and to the extent that it is a corporation, he does not allege its state of incorporation or where it has its principal place of business. "For diversity, a corporation is a citizen of its state of incorporation and the state where its principal place of business is located." Grynberg, 805 F.3d at 905 (citing 28 U.S.C. § 1332(c)(1)). If Lasik Vision is not a corporation then his allegations are wholly deficient. Therefore, to allege subject matter jurisdiction adequately, Mr. Ortega must allege the type of entity that Lasik Vision is and its citizenship accordingly.

       3.      Mr. Ortega improperly combines Synchrony Bank and Care Credit into a single entity. A brief internet search reveals that this Defendant is in fact two separate entities. See

https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=4423125 (Synchrony Bank) (last visited April 23, 2019);

https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=5035120 (CareCredit, LLC) (last visited Apr. 23, 2019). Thus to the extent Mr. Ortega wishes to bring claims against both entities, he cannot combine them into a single entity and must make separate allegations concerning each entity.

       4.      Mr. Ortega does not make specific allegations concerning the citizenship of Synchrony Bank or Care Credit. To allege diversity, Mr. Ortega must determine what type of entity Synchrony Bank is—for example, a state bank, national bank, or federal savings association—and make allegations to that effect as well as to its citizenship based on the type of entity it is. If Synchrony Bank is a state bank, it is a citizen of the state of incorporation and the state of its principal place of business. See Heil v. Iron Cty., 376 F. App'x 868, 871 (10th Cir. 2010) (unpublished) (finding diversity jurisdiction

where the plaintiffs were California citizens, and the defendant state bank "was formed pursuant to Utah's banking laws and had its principal place of business in Utah"). Or, if Synchrony Bank is a national bank, it is a citizen of the state where it has its main office. See Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2006) (holding that "a national bank, for § [28 U.S.C.] 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."). And if Synchrony Bank is a federal savings association, it is a citizen of the state where it has its home office. See 12 U.S.C. § 1464(x) ("In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office."). Additionally, to the extent Care Credit is a limited liability company ("LLC"), Mr. Ortega must identify it as such and allege the citizenship of each member of the LLC. "Supreme Court precedent makes clear that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members." Siloam Springs, 781 F.3d at 1237–38 (citing Carden v. Arkoma Assocs., 494 U.S. 185, 195–96 (1990) & ConAgra Foods, Inc. v. Americold Logistics, LLC, 776 F.3d 1175, 1180 (10th Cir. 2015)).

***

Mr. Ortega's Proposed Amended Complaint falls well short of establishing that this Court has subject matter jurisdiction over his claims based on diversity jurisdiction. Therefore, Mr. Ortega's proposed amendment to his complaint is futile. See Watson, 242 F.3d at 1239–40 ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ."); Aufdemorte v. Mountain W. Med.

9

Ctr., No. 2:12-CV-615, 2013 WL 474545, at *1 (D. Utah Feb. 7, 2013) (unpublished) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction."). Accordingly, the Court will not allow Mr. Ortega to file the Proposed Amended Complaint at ECF No. 5-1. However, the Court will permit Mr. Ortega to file an Amended Complaint that attempts to correct the deficiencies outlined above. Any amended pleading that Mr. Ortega files must allege the existence of subject matter jurisdiction sufficiently, or the undersigned will recommend that the District Judge dismiss Mr. Ortega's action for lack of subject matter jurisdiction because the Court cannot address the merits of the claims or any other matters before it until it determines that it has subject matter jurisdiction. See Lightfoot v. Cendant Mortg. Corp., 580 U.S. ____, 137 S. Ct. 553, 562 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) . . . before it can resolve a case.").

### B. The Proposed Amended Complaint Does Not Plead Facts Sufficient to Show that Mr. Ortega Can Maintain Malpractice-Related Claims Against Lasik Vision

Mr. Ortega's Proposed Amended Complaint asserts claims against Lasik Vision arising out of its alleged malpractice with respect to Lasik surgery. (Proposed Am. Compl., ¶¶ 8, 10–11, 27–94, ECF No. 5-1.) Specifically, Mr. Ortega asserts claims against Lasik Vision for (1) misrepresentation of fact, (2) medical malpractice, (3) battery, (4) negligence per se, and (5) breach of the implied warranty of fitness for a particular purpose. (Id., ¶¶ 27–94.) However, Mr. Ortega does not allege that he met the prelitigation procedural requirements necessary to maintain claims under Utah law arising out of Lasik Vision's alleged malpractice. In particular, Mr. Ortega does not

allege that he complied with the Utah Health Care Malpractice Act's ("Malpractice Act") ninety-day notice requirement or that he requested prelitigation panel review prior to initiating this lawsuit. As such, all of Mr. Ortega's claims in the Proposed Amended Complaint arising out of Lasik Vision's alleged malpractice are subject to dismissal.

Utah's Malpractice Act gives health care providers procedural protections not afforded to other alleged tortfeasors. See Carter v. Milford Valley Mem'l Hosp., 2000 UT App 21, ¶ 13, 996 P.2d 1076, 1079 (discussing purpose of Malpractice Act). To curb malpractice insurance costs, the Malpractice Act requires claimants to participate in certain prelitigation procedural requirements designed " 'to expedite early evaluation and settlement of claims.' " Labelle v. McKay Dee Hosp. Ctr., 2004 UT 15, ¶¶ 3-4, 89 P.3d 113 (quoting Utah Code § 78-14-2). "Two of the prelitigation procedures created by the Medical Malpractice Act stand out because they have been expressly designated as preconditions to invoking the jurisdiction of the district court: the notice of intent to commence action, and the prelitigation hearing." Id., ¶ 4.

The Malpractice Act's notice requirement mandates that a claimant provide a potential health care provider defendant notice ninety days in advance of his intent to commence a malpractice action. Utah Code § 78B-3-412(1)(a). The Malpractice Act defines "health care provider" as "any person, partnership, association, corporation, or other facility or institution who causes to be rendered or who renders health care or professional services as a hospital, health care facility, physician, registered nurse, . . . optometrist, . . . and officers, employees, or agents of any of the above acting in the course and scope of their employment." Utah Code § 78B-3-403(12). The Malpractice Act further defines a malpractice action as "any action against a health care provider,

11

whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider." Id., ¶ (17). The prelitigation notice provided must include:

> (a) a general statement of the nature of the claim;
> (b) the persons involved;
> (c) the date, time, and place of the occurrence;
> (d) the circumstances surrounding the claim;
> (e) specific allegations of misconduct on the part of the prospective defendant; and
> (f) the nature of the alleged injuries and other damages sustained.

Utah Code § 78B-3-412(2). Further, the Malpractice Act also requires that, within sixty days of service of the notice, the claimant request "prelitigation panel review." Utah Code § 78B-3-416(2)(a). The prelitigation panel conducts informal, nonbinding proceedings. Id., ¶ (1)(c).

The Court will dismiss any malpractice-related claims brought in court prior to the satisfaction of these prelitigation procedural requirements for lack of subject matter jurisdiction. See McBride-Williams v. Huard, 2004 UT 21 ¶ 12, 94 P.3d 175 (acknowledging "that statutory language creating a 'condition precedent' to commencing an action creates a precondition to suit and that a party's failure to satisfy a precondition results in an adjudication for 'lack of jurisdiction' . . . ." (quoting Madsen v. Borthick, 769 P.2d 245, 249-50 (Utah 1988) & Foil v. Ballinger, 601 P.2d 144, 149-50 (Utah 1979)).

Mr. Ortega's Proposed Amended Complaint asserts that Lasik Vision performed Lasik eye surgery on him, (Proposed Am. Compl., ¶ 8, ECF No. 5-1), qualifying Lasik Vision as a health care provider under the Malpractice Act. See Utah Code Ann. § 78B-3-403(12); Platts v. Parents Helping Parents, 947 P.2d 658, 663 (Utah 1997) ("All those

identified in the statute are 'health care providers.' All others rendering care and services similar to those so explicitly identified are also 'health care providers.' "). However, Mr. Ortega does not allege that he complied with the ninety-day notice requirement or that he requested prelitigation panel review prior to bringing this suit, as required under the Malpractice Act. Because Mr. Ortega does not allege that he satisfied these requirements prior to initiating this lawsuit, the Court would lack subject matter jurisdiction over any of his claims arising out of Lasik Vision's alleged malpractice. See Tools v. Red Rock Canyon Sch., No. 2:05-CV-155 TS, 2005 WL 1501435, at *2-*3 (D. Utah June 23, 2005) (unpublished) (dismissing plaintiff's action for lack of subject matter jurisdiction where the plaintiff failed to comply with the Malpractice Act's ninety-day notice requirement). This conclusion covers all of Mr. Ortega's proposed claims against Lasik Vision—misrepresentation of fact, medical malpractice, battery, negligence per se, and breach of the implied warranty of fitness for a particular purpose—because the requirements apply to any malpractice-related claim against a health care provider whether they sound "in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered . . . ." See Utah Code Ann. § 78B-3-403(17).

As the Proposed Amended Complaint does not allege compliance with these prelitigation procedures, the claims against Lasik Vision would be subject to dismissal upon filing of the Proposed Amended Complaint. Accordingly, Mr. Ortega's proposed amendment is futile, and the Court will not allow him to file his Proposed Amended Complaint at ECF No. 5-1. See Aus v. Salt Lake Cty., No. 216-CV-00266-JNP-BCW, 2017 WL 1383698, at *3 (D. Utah Apr. 18, 2017) (unpublished) ("Plaintiffs' malpractice

claim would be immediately subject to dismissal upon filing of the amended complaint. This reason alone justifies denial of the requested leave to amend."). However, if Mr. Ortega can truthfully allege compliance with the Malpractice Act's prelitigation procedural requirements, he may file an Amended Complaint that corrects these deficiencies.

### C. The Proposed Amended Complaint Does Not Plead Facts Sufficient to State a Breach of Contract Claim Against Synchrony Bank or Care Credit

Mr. Ortega also seeks to assert a claim for breach of contract against Synchrony Bank and Care Credit. (Proposed Am. Compl., ¶¶ 95–100, ECF No. 5-1.) Mr. Ortega alleges that they "have refused to accept [his] request for a modification of the loan agreement made on 12/31/2016" and that "[o]n October 22, [he] mailed [them] a proposed loan agreement modification and [they] returned a response rejecting [his] proposal." (Proposed Am. Compl., ¶¶ 95–96, ECF No. 5-1.) Further, he asserts that he notified Synchrony Bank and Care Credit that he "was dissatisfied with the goods and services purchased" and "certifies that he has complied with all rules and regulations concerning payment to [them]." (Id., ¶¶ 98–99.) Mr. Ortega also claims in his statement of facts that he "is now paying 'interest on the interest' which is not part of the credit card agreement" and that Synchrony Bank and Care Credit's use of compounding interest is "unconscionable." (Id., ¶¶ 12, 13.)

The facts Mr. Ortega asserts in the Proposed Amended Complaint do not suffice to allege a breach of contract by Synchrony Bank or Care Credit. Mr. Ortega alleges that Synchrony Bank and Care Credit refused to accept his proposed loan modification agreement. However, a refusal to accept a modification of an existing contract does not breach a contract. To establish a breach of contract under Utah law, a plaintiff must

14

show that the party failed to perform under an existing contract. See Bair v. Axiom Design, L.L.C., 2001 UT 20, ¶ 14, 20 P.3d 388 ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."). Further, "a contract to modify an existing agreement must include consideration[,]" and "parties seeking to modify a contract must reach a meeting of the minds on the modification." Osmond v. Litton Loan Servicing, LLC, No. 1:10-CV-11, 2011 WL 1988403, at *2 (D. Utah May 20, 2011) (unpublished). Mr. Ortega does not allege that he offered consideration for his proposed modification, and in alleging that Synchrony Bank and Care Credit did not agree to his proposed modification, he asserts facts showing that the parties did not have a meeting of the minds on any modification.

Mr. Ortega comes closer to stating a claim for breach of contract by alleging in his statement of facts that he "is now paying 'interest on the interest' which is not part of the credit card agreement," but this allegation is conclusory, devoid of any factual support, and therefore insufficient to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (indicating that to state a plausible claim for relief a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). To the extent Mr. Ortega claims that Synchrony Bank or Care Credit charged interest in violation of its credit card agreement with him, he must plead facts supporting that claim, such as the provision(s) of the credit card agreement governing interest, when the entity started to charge interest on the interest, in what amount, how long that continued, whether it is continuing, and the details of how else it violated that provision(s).

Finally, Mr. Ortega's bare assertion that the use of compounding interest is "unconscionable," without pleading any facts to support that assertion, fails to state a claim for relief.  See Iqbal, 556 U.S. at 678.  "A party claiming unconscionability bears a heavy burden" because "[t]he law enables parties to freely contract, establishing terms and allocating risks between them," and "even permits parties to enter into unreasonable contracts or contracts leading to a hardship on one party." Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 402 (Utah 1998).  Accordingly, unconscionability "has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Id. (quoting Resource Management Co. v. Weston Ranch, 706 P.2d 1028, 1043 (Utah 1985) (quoting Williams v. Walker–Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965))) (emphasis omitted).

Because Mr. Ortega's Proposed Amended Complaint does not allege facts sufficient to show a breach of contract, the Court finds Mr. Ortega's breach of contract claim futile because it would be subject to dismissal upon filing of the Proposed Amended Complaint.  Accordingly, the Court will not permit Mr. Ortega to file his Proposed Amended Complaint at ECF No. 5-1 in its current form.  However, as already indicated, the Court will allow Mr. Ortega to file an Amended Complaint that corrects, to the extent possible, the deficiencies outlined above.

**D. The Court Declines to Order Service of Mr. Ortega's Complaint at this Time**

Mr. Ortega also moves the Court to serve the operative Complaint in this case on Lasik Vision and Synchrony Bank.  (Mot. for Service of Process, ECF No. 4.)  While a district court must order the United States Marshals Service to serve a complaint on

behalf of a plaintiff proceeding in forma pauperis, Fed. R. Civ. P. 4(c)(3), the Court finds Mr. Ortega's request premature.  As an initial matter, Mr. Ortega moves the Court to serve the original Complaint (ECF No. 3) that he filed in this case.  However, Mr. Ortega's original Complaint does not contain sufficient allegations concerning subject matter jurisdiction and does not assert any causes of action against the Defendants.  Therefore that Complaint is facially deficient and subject to dismissal for, at a minimum, the reasons stated above with respect to the Proposed Amended Complaint.  Accordingly, the Court declines to order service of the Complaint at this time and DENIES Mr. Ortega's Motion for Official Service of Process.

However, as set forth above, the Court will allow Mr. Ortega to file an Amended Complaint that corrects the deficiencies outlined.  After receipt of the Amended Complaint, the Court will review the complaint to determine if it has subject matter jurisdiction, and if it states a claim for relief.  See 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that where a party proceeds in forma pauperis, a court must "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").  When the Court can assure that it has subject matter jurisdiction and that the Amended Complaint states a claim for relief, it will order the United States Marshals Service to serve the Amended Complaint on the named Defendants.

## CONCLUSION

For the reasons stated above, the Court finds Mr. Ortega's proposed amendment to his Complaint futile.  Accordingly, the Court DENIES Mr. Ortega's Motion for Order to Amend Complaint (ECF No. 5) to the extent he seeks to file the Proposed Amended Complaint at ECF No. 5-1.  However, the Court GRANTS Mr. Ortega leave to file an

17

Amended Complaint by May 24, 2019. The Amended Complaint should attempt to address the deficiencies identified in this Order. Mr. Ortega does not need to seek leave to file the Amended Complaint. If Mr. Ortega fails to file an Amended Complaint by May 24, 2019, the undersigned will recommend that the District Judge dismiss this case without prejudice for lack of subject matter jurisdiction. Further, for the reasons set forth above, the Court DENIES without prejudice Mr. Ortega's Motion for Service of Process (ECF No. 4) at this time.

DATED this 24th day of April, 2019.

BY THE COURT:

_____
Honorable Evelyn J. Furse
United States Magistrate Judge